IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ASARCO LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>XSTRATA PLC, a UK corporation,<br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:12-CV-527-TC |

In this CERCLA[1] cost recovery action, Plaintiff Asarco LLC seeks reimbursement of environmental remediation costs it incurred to clean up hazardous waste at a former mining site in Utah. Although Asarco attributes the hazardous waste to Noranda Mining Inc.'s disposal activities, its current complaint seeks reimbursement from Defendant Xstrata PLC and alleges that Xstrata is the successor to Noranda Mining's liabilities.

Xstrata moves to dismiss on two grounds. First, Xstrata asserts that it is not a proper party defendant because it is not the successor to Noranda Mining, which is actually a separate, viable corporate entity. Second, Xstrata contends that even if it was properly named, CERCLA's three-year statute of limitations bars Asarco's claim.

In response, Asarco filed a motion for leave to amend its complaint. Asarco admits that it

---

[1]CERCLA stands for Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq.

mistakenly named Xstrata.  It asks the court for leave to replace Xstrata with Noranda Mining Inc. and to find that the amendment relates back to the date of the original complaint because, according to Asarco, Noranda Mining is so closely linked to Xstrata that Noranda Mining had timely constructive, if not actual, notice of the suit.[2]  Asarco also addresses Xstrata's statute of limitations argument, contending that substituting Noranda Mining as the defendant would not be futile because the statute of limitations had not expired when Asarco filed its complaint.

For the reasons set forth below, the court holds that (1) Asarco has established that Noranda Mining Company had constructive notice of the suit; and (2) Asarco's claim is not barred by the CERCLA statute of limitations.  Accordingly, the court denies Xstrata's motion to dismiss and grants Asarco's motion for leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

Asarco has incurred environmental remediation costs to clean up property in Summit County, Utah.  The property, called the Richardson Flat/Park City Mining District ("Site"), is a hazardous waste site created by past mining operations.

In the mid-1980s, the Environmental Protection Agency (EPA) investigated the Site and identified it as a hazardous waste site requiring cleanup under CERCLA.  In 2006, the EPA pursued enforcement actions against Potentially Responsible Parties (PRPs) at the Site, including Asarco and Noranda Mining Inc.  In one of those actions, the EPA filed a complaint in the District of Utah in September 2006 under CERCLA Section 107, naming United Park City

---

[2]Asarco alternatively requests that the court grant Asarco limited discovery on the notice issue.  Asarco's request is moot, because the existing record is sufficient to establish constructive notice.

Mines Company, Atlantic Richfield Company, Falconbridge Limited, and Noranda Mining Inc. as PRPs liable for clean-up costs at the Site.  (See Compl. in United States v. United Park City Mines Co., Case No. 2:06-CV-745-PGC (D. Utah), attached as Ex. B to Docket No. 40.)  The defendants in that action settled with the EPA.  The attorney who represented Noranda Mining Inc. and Falconbridge in the EPA cost recovery action currently represents Xstrata in the case now before the court.  (See EPA CERCLA cost-recovery complaint against four parties, including Falconbridge and Noranda Mining, attached as Ex. B to docket No. 40;  Consent Decree between the EPA and Noranda Mining/Falconbridge, attached as Ex. C to Docket No. 40).

Although Asarco, as one of the main owners or operators at the Site, was no doubt on the EPA's short list of entities to sue for clean-up costs, the EPA did not name Asarco as a party in the September 2006 action most likely because Asarco was in Chapter 11 bankruptcy proceedings at the time the CERCLA enforcement action was filed.[3]  Instead, the EPA pursued its CERCLA claim against Asarco in bankruptcy court.  Atlantic Richfield Company (one of the settling defendants in EPA's 2006 CERCLA suit) also brought a CERCLA contribution claim against Asarco in bankruptcy court.  (In a CERCLA contribution action, any party held liable under CERCLA Section 107 (42 U.S.C. § 9607) for clean-up costs may sue another PRP to recover a portion of its costs.  42 U.S.C. § 9613(f) (CERCLA § 113(f)).)

During the bankruptcy proceedings, Debtor Asarco entered into two settlements related to payment and allocation of costs to clean up the Site: one with the EPA and one with Atlantic

_____

[3]On August 9, 2005, Asarco filed a voluntary petition for relief under Chapter 11 in the bankruptcy court for the Southern District of Texas.

Richfield.  The bankruptcy court approved the private CERCLA settlement agreement between
Asarco and Atlantic Richfield on October 17, 2008.  The bankruptcy court approved the
settlement agreement between Asarco and the EPA on June 5, 2009.  On November 13, 2009, the
bankruptcy court approved Asarco's plan of reorganization, and on December 9, 2009, the plan
of reorganization went into effect.

     After Asarco emerged from its Chapter 11 bankruptcy re-organization, it pursued its right
under CERCLA to require other PRPs to reimburse Asarco for their fair share of remediation
costs.  In particular, Asarco filed this CERCLA contribution action on June 5, 2012, alleging that
Xstrata is the successor to liabilities of Noranda Mining Inc., which Asarco believed was a
defunct PRP.  In its complaint, Asarco alleged the following:

> Xstrata PLC ("Xstrata") is a UK corporation that has owned or operated mining
> operations involving and discharging hazardous substances in facilities in and
> near the Site.  Xstrata operates a mining facility in Summit County, Utah.  Xstrata
> is successor-in-interest to Noranda Mining Company ("Noranda").  Xstrata
> acquired Falconbridge Limited in 2006, which merged with Noranda in 2005.
> Noranda operated mining operations in Summit County, Utah [and] discharged
> hazardous substances in and near the Site.  Xstrata is an "owner" and/or
> "operator" of a "facility" [under CERCLA].

(Compl. ¶ 5 (emphasis added).)  The successor-in-interest allegation was incorrect, as Asarco
now admits.

     Before Asarco filed its complaint here, Asarco's research led to the mistaken conclusion
that Xstrata was a successor to Noranda Mining's environmental liabilities.  Asarco found
documentation that a company named Noranda, Inc. was acquired by Falconbridge, which was
then acquired by Xstrata.  That chain of corporate succession appears to be accurate.  But Asarco
erroneously equated Noranda, Inc. with Noranda Mining Inc. and so it named Xstrata as the

defendant.  The confusion was somewhat warranted because (1) the company names are similar;

(2) public records show Noranda Inc.'s successor to be first Falconbridge and then Xstrata (see,

e.g., Ex. 1 to Docket No. 51); and (3) Falconbridge and Noranda Mining Company were both

associated with the Site (see EPA CERCLA cost-recovery complaint against four parties,

including Falconbridge and Noranda Mining, attached as Ex. B to Docket No. 40).

After Xstrata filed its motion to dismiss Asarco's complaint, Asarco re-evaluated its

claim against Xstrata and determined that a substitution of defendants is necessary here because

Noranda Inc. is not the same entity as Noranda Mining Inc.  Having confused the two entities,

Asarco now seeks leave from the court to amend the complaint to correct its mistake.

## ANALYSIS

Asarco contends that (1) naming Xstrata was a misnomer that can be easily corrected by

substituting Noranda Mining for Xstrata under Rule 15(c) of the Federal Rules of Civil

Procedure; (2) Noranda Mining had sufficient notice of the complaint and so the amendment

would relate back to the date of the original complaint; and (3) the proposed amendment would

not be futile because the filing date of the original complaint falls within the applicable three-

year statute of limitations.

The court first addresses the issue of whether the CERCLA statute of limitations bars

Asarco's contribution claim, regardless of which defendant is named as a party, because even if

the amendment relates back, the proposed amendment would be futile if the court finds that the

CERCLA three-year statute of limitations bars Asarco's claim.

**CERCLA Statute of Limitations**

Contribution claims under CERCLA are subject to a three-year statute of limitations,

which provides that "[n]o action for contribution for any response costs or damages may be commenced more than <u>3 years after . . . entry of a judicially approved settlement with respect to such costs or damages</u>."  42 U.S.C. § 9613(g)(3)(B) (CERCLA § 113(g)(3)(B)) (emphasis added).  The triggering event—"entry of a judicially approved settlement"—is a point of contention here.

The parties disagree on which judicial action triggered the running of the statute of limitations in this case.  Xstrata contends that the statute of limitations began to run on October 17, 2008, the date the bankruptcy court approved the private settlement agreement between Asarco and Atlantic Richfield.  Asarco maintains that the statute of limitations began to run on November 13, 2009, the date the bankruptcy court approved Asarco's plan of reorganization, which, Asarco maintains, cemented the amount of liability under the private agreement between Asarco and Atlantic Richfield.

Neither party's position is correct.  As explained below, the relevant agreement here is Asarco's settlement with the EPA, and the trigger date for the statute of limitations on Asarco's claim was June 5, 2009, the date the bankruptcy court approved the settlement agreement between Asarco and the EPA.

### A Bankruptcy Court's Approval of a Reorganization Plan Does Not Trigger the CERCLA Statute of Limitations.

Asarco argues that in the bankruptcy context "entry of a judicially approved settlement" means approval of the reorganization plan.  According to Asarco, its liability was not fixed under either settlement agreement until the bankruptcy court approved the Reorganization Plan.  But

Asarco does not cite to any controlling or persuasive cases to support its conclusion.[4]

The court finds the District of Montana court's 2012 decision in <u>Asarco LLC v. Atlantic Richfield Co.</u> (to which Xstrata cites) persuasive.  In that case, the District of Montana, facing the very same argument Asarco raises before this court, concluded that:

> [t]he plain language of 42 U.S.C. § 9613(g)(3)(B) contradicts ASARCO's contention that the statute of limitations did not run until its Reorganization Plan was either approved by the Bankruptcy Court or became effective.  <u>Asarco, LLC v. Hecla Min. Co.</u>, 2012 WL 5929962, *2 (E.D. Wash. Nov. 27, 2012) (rejecting a like argument).  Additionally, the date a settling party makes payment is irrelevant.  <u>RSR Corp. v. Com. Metals Co.</u>, 496 F.3d 552, 558 (6th Cir. 2007) ('[E]ven if the covenant regarding future response costs did not take effect until the remedial action was complete, <u>the statute of limitations for contribution actions runs from the 'entry' of the settlement</u>, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.") [emphasis added].  Otherwise, a party could circumvent the statute of limitations by delaying payment under a settlement.

<u>Asarco LLC v. Atlantic Richfield Co.</u>, 2012 WL 5995662 *2, Case No. CV 12-53-H-DLC (D. Mont. Nov. 30, 2012) [hereinafter <u>Atlantic Richfield</u>].

Here, nothing in the record suggests that the terms of the 2009 agreement between Asarco and the EPA were somehow modified by the subsequent plan of reorganization.  Instead, all the terms remained the same and the reorganization plan was essentially a liquidation plan determining how money would be distributed, not what the debtor's liabilities were.  (See Art. VII, para. 7.1 of Ex. E to Docket No. 40 ("[T]he organization, operative documents and funding

---

[4]For example, Asarco cites to <u>United States v. Scott's Liquid Gold</u>, 934 F. Supp. 362, 363 (D. Colo. 1996), and <u>Ziino v. Baker</u>, 613 F.3d 1326, 1329 (11th Cir. 2010), to support its conclusion.  (See Docket No. 40 at pp. 6-7.)  But <u>Scott's Liquid Gold</u> is completely distinguishable, as Xstrata effectively notes on page six of its reply brief (Docket No. 48).  And the bankruptcy decision in <u>Ziino v. Baker</u> is not helpful, because it does not address, much less support, the proposition for which Asarco cites it.

amounts of the Environmental Custodial Trusts and the trust created by the Residual

Environmental Settlement Agreement under the Parent's Plan shall be identical to those which

the Debtors and the applicable governmental agencies agreed upon and obtained approval of in

connection with the Environmental 9019 Motion, except for ministerial non-substantive

changes.").)

**The Relevant Settlement Agreement is the One Between Asarco and the EPA.**

Although Xstrata correctly argues that an order approving a settlement agreement (as

opposed to an order approving a reorganization plan) is the trigger, it errs by focusing on the

settlement agreement between Asarco and Atlantic Richfield rather than the agreement between

Asarco and the EPA.

As noted above, Atlantic Richfield was subject to the EPA's September 2006

enforcement action under CERCLA § 107 relating to the Site.  (See Ex. B to Docket No. 40.)

After the federal district court approved Atlantic Richfield's section 107 settlement with the

EPA, Atlantic Richfield (to the extent the settlement required it to pay more than its fair share of

clean-up costs) had a right of contribution under CERCLA section 113(f) against other PRPs.

See 42 U.S.C. § 113(f)(3)(B) ("Any person may seek contribution from any other person who is

liable or potentially liable under section 9607(a) of this title, during or following any civil action

under section 9606 of this title or under section 9607(a) of this title.") (emphasis added).  It was

only after Atlantic Richfield settled with the EPA that Atlantic Richfield brought its CERCLA

§ 113(f) contribution action against co-PRP and Chapter 11 Debtor Asarco.  (See Settlement

Agreement at 3 (Docket No. 40-4).)

In the bankruptcy proceeding, when Asarco and Atlantic Richfield entered into a section

113 settlement agreement, that private settlement between Atlantic Richfield and Asarco addressed their liabilities with respect to each other, no one else.  A section 113 settlement does not trigger a second right to contribution under section 113, and section 113 does not authorize contribution for private party settlements.[5]

Asarco is not attempting to recover the costs it incurred as part of its settlement agreement with Atlantic Richfield.  It is attempting to recover costs from Noranda Mining for costs it has paid to the United States.  What occurred between Asarco and Atlantic Richfield has no bearing on other PRPs' liability to Asarco for clean-up costs at Site.  Indeed, the agreement between Asarco and Atlantic Richfield specifically says that the agreement only addresses claims between the two parties to the agreement (that is, Asarco and Atlantic Richfield).  (See Sept. 2008 Settlement Agreement between Asarco and Atlantic Richfield, Pt. II (Ex. D to Docket No. 40).)

To analyze the statute of limitations issue, the court must focus on the agreement between Asarco and the EPA.  At the time Asarco was settling with Atlantic Richfield, the EPA was negotiating a separate settlement agreement with Asarco under CERCLA § 107.[6]  When the

---

[5]Curiously, Asarco makes this very point in a footnote in its pleadings, in which Asarco expressly states, without any follow-up, that "Asarco's contribution claim regarding the Site did not accrue until June 5, 2009 (the date on which the Bankruptcy Court approved the Richardson Flats Site Government Settlement.  The Original Complaint was therefore timely filed on June 5, 2012."  (Docket No. 40 at n.6.)

[6]In its complaint, Asarco alleges that it settled with "environmental regulators [for] $8,850,000 to resolve its CERCLA liabilities at the Site ('Richardson Flats Site Settlement')." (Compl. ¶ 10 (emphasis added).)  This allegation is not completely accurate.  As the motion pleadings clarify, the Complaint's language should have indicated that Asarco settled with the government and private parties collectively for a total of $8,850,000.  According to the motion pleadings, Asarco agreed to pay the government $7,400,000 to settle its environmental liabilities at the site, and that, in a separate private settlement agreement, Asarco agreed to pay $1,450,000

bankruptcy court approved the settlement between Asarco and the EPA, Asarco's right to contribution arose.  See 42 U.S.C. § 113(f)(3)(B).  Now Asarco is pursuing Xstrata (or, more accurately, Noranda Mining Company) under § 113(f), the same CERCLA provision upon which Atlantic Richfield relied to recover costs from Asarco.

Because Asarco filed its complaint on June 5, 2012, exactly three years from the date the statute began to run (that is, June 5, 2009, when the bankruptcy court approved the settlement agreement), the statute of limitations does not bar its claim.  Accordingly, Asarco's proposed amendment, if it relates back, would not be futile.

**Relation Bank of Amendment Under Rule 15(c)(1)(C)**

Rule 15(c) allows an amendment to relate back to the date the original complaint was filed if (1) the proposed amendment changes the party or name of the party against whom a claim is asserted; (2) the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; (3) within the period provided by Rule 4(m) for serving the summons and complaint [120 days from date of filing], the party to be brought in by amendment received notice of the action and will not be prejudiced defending on the merits;" and (4) that party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

Here, the first and second elements are easily satisfied.  The parties dispute the questions of whether Noranda Mining received notice and whether Noranda Mining would be prejudiced if

---

to Atlantic Richfield.

the amendment were allowed.

**Notice**

On the record, the court cannot conclude that Noranda Mining had actual notice of the suit, although it is possible that Asarco, with limited discovery, could establish actual notice. Discovery is not necessary, however, because Asarco has established constructive notice based on the record already before the court.

There is no particular formula for determining whether a party had constructive notice. Certain factors may support a finding of constructive notice.  For example, if the named defendant and proposed defendant are linked in some way through corporate connections, perhaps by sharing directors or officers or the same office, that factor weighs in favor of finding constructive notice (that is, the proposed defendant should have known it would be named in the suit absent the plaintiff's mistake about corporate names).  Also, sharing the same attorney has been held to suggest constructive notice.  See, e.g., Pinsonneault v. City of Hamden, 2012 WL 3637639 at *5, No. 3:11-cv-00946 (VLB) (D. Conn. Aug. 22, 2012); Domingo v. CC Nursing Home LLC, 2011 WL 4702913 at *2, Case No. 2:11-cv-00061-CW (D. Utah Oct. 4, 2011); Bruno v. Paulison, 2009 WL 377300 at *4, Civil No. RDB 08-0494 (D. Maryland Feb. 12, 2009) (citing Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (determining that newly added corporate defendant had constructive notice of lawsuit when it was an affiliate of the originally named defendant and both entities were represented by the same lawyers)).

Here, certain factors weigh in favor of finding that Noranda Mining Inc. had constructive notice of the suit.  For instance, the same attorney who represented Noranda Mining in the 2006 EPA enforcement action now represents Xstrata.  As Asarco points out, "[w]hile Mr. Fognani's

11

attorney-client relationship with Noranda Mining may have terminated, the fact that both it and Xstrata retained him for work related to the site . . . indicates a certain uniformity of interests and close connection between the entities." (Asarco's Reply (Docket No. 51) at 3.) Indeed, Xstrata, through its attorney, obtained information from Noranda that allowed it to present a defense that protects Noranda Mining's interests (for example, the affidavit of Paul Rodger Shaw, attached as Ex. A to Docket No. 46).

Also, Asarco, in its complaint, specifically lists Noranda Mining as the party it seeks contribution from, although Asarco mistakenly thought it was going to have to sue a corporate successor to Noranda Mining. When Asarco filed its complaint, it did intend to sue the party responsible for the actions of Noranda Mining Inc. Such intention is apparent from the face of the original complaint, in which it expressly identified "Noranda Mining Company" as the original PRP. (See Compl. ¶ 5.) The problem was that Asarco mistakenly linked Noranda Mining Company to Xstrata. (See id.) That mistake should have been clear to Xstrata's attorney.

Finally, there is some overlap between Noranda Mining and subsidiaries of Xstrata (Norfalco), including sharing officers (Paul Shaw) and corporate addresses. (See Exs. F & G to Docket No. 40.)

Given all of the above, the court finds that Noranda Mining had constructive notice of the suit within the 120-day service period.

**Prejudice**

The question is whether relation back would harm the substituted party's ability to defend the case on the merits. Maycher v. Muskogee Med. Ctr. Auxiliary, 129 F.3d 131, 1997 WL

12

698007, No. 97-7021 (10th Cir. Nov. 6, 1997) (table opinion).  There is no reason to believe that Noranda Mining could not adequately defend itself against Asarco's CERCLA contribution claim.  The case is in the very early stages of litigation.  No discovery has occurred.  Noranda Mining is familiar with the Site.  And Xstrata is already defending Noranda Mining's interests by making the statute of limitations argument.  For these reasons, the court finds that Asarco has shown that relation back would not prejudice Noranda Mining.

**Attorneys' Fees and Costs**

Xstrata asks the court to award attorneys' fees and costs it incurred defending against Asarco's claim.[7]  According to Xstrata, this case should not have been filed at all because in the factually similar case of Atlantic Richfield, the District of Montana court clearly held that Asarco's CERCLA claim for contribution was time-barred.  Xstrata contends that because Asarco did not prevail in the District of Montana case, Asarco should have known its claim was improper here and should not have repeated the same losing arguments here.  Xstrata also asserts that the difference between Xstrata and Noranda Mining Inc. was obvious and that Asarco actually intended to sue Xstrata, hoping that a "creative" litigation strategy would allow it to dip into the deep pockets of Xstrata.  (See Xstrata's Opp'n to Mot. for Leave to Amend (Docket No. 46) at 6.)

Xstrata's reasons are not persuasive.  The Atlantic Richfield case dealt with a different site and different settlement agreements.  And this case was filed before the District of Montana

---

[7]Xstrata does not cite to any authority to support its claim that the court may award such fees, so it must be relying on the court's inherent power to award fees in appropriate circumstances.

issued its opinion.  In addition, the difference between Xstrata and Noranda Mining Inc. was not obvious.  The record before this court raises more questions than answers about the relationships between the parties.  And there is no evidence that Asarco intentionally named Xstrata knowing it is not a proper party defendant.  For these reasons, and given courts' general policy to require each party to bear its own fees and costs, the court denies Xstrata's request for attorneys' fees.

## CONCLUSION

Based on the pleadings and record before the court (which consists mostly of court documents that the court may, and does, judicially notice), and for the reasons set forth above, Asarco's CERCLA contribution claim is not barred by the statute of limitations.  Moreover, Asarco has established that Noranda Mining Inc. received constructive notice of the suit and so the amendment substituting Xstrata with Noranda Mining Inc. relates back to the June 5, 2012 date of the original complaint.

## ORDER

Defendant Xstrata PLC's Motion to Dismiss (Docket No. 39) is DENIED.  Plaintiff Asarco LLC's Motion for Leave to Amend (Docket No. 42) is GRANTED.  Plaintiff is hereby directed to file its proposed amended complaint as soon as practicable.

DATED this 14th day of June, 2013.

BY THE COURT:

_Tena Campbell_

TENA CAMPBELL
U.S. District Court Judge