IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ASARCO, LLC, a Delaware Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>NORANDA MINING, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [176] DEFENDANT'S MOTION TO STAY**<br><br>Case No. 2:12-cv-527 DN<br><br>District Judge David Nuffer |

Asarco LLC (Asarco) has paid over $8.7 million to settle environmental cleanup liabilities with the Environmental Protection Agency (EPA) related to a site near Park City, Utah.[1] Asarco's complaint[2] seeks contribution from Defendant Noranda Mining, Inc. (Noranda) pursuant to Section 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(f), for the portion of the environmental damages that Noranda caused.[3]

Noranda seeks a stay of this action because the full extent of the damages is uncertain until the property is remediated.[4] The EPA has not yet approved a remediation plan for a large portion of the site. For reasons later stated, this case is stayed until the EPA approves a remediation plan for the site.

---

[1] Second Amended Complaint, docket no. 58, filed August 8, 2013

[2] *Id*.

[3] *Id.* ¶¶ 21–32.

[4] Defendant Noranda Mining, Inc.'s Motion and Memorandum In Support of Stay, docket no. 176, filed February 2, 2017.

**Table of Contents**

FACTUAL BACKGROUND ........................................................................................... 2
LEGAL STANDARD .................................................................................................... 6
DISCUSSION ................................................................................................................ 6
    1.    TheNature of CERCLA Contribution Claims........................................... 6
    2.    Asarco's Contribution Claim Depends on a Future Remediation Plan .................. 7
ORDER ........................................................................................................................ 11

## FACTUAL BACKGROUND[5]

In the 1870s, prospectors began mining lead and silver ore from the mountains near Park City, Utah.[6] As the ore was processed, waste "tailings" was created from pulverizing the rock in the process of extracting the metal.[7] The tailings washed down Silver Creek, ultimately coming to rest in an area called "Lower Silver Creek."[8] Below is a map of the mining site.



---

[5] Noranda provided a factual background section in its motion. Asarco did not. Asarco does not dispute the facts as alleged by Noranda. On this motion, the facts appear to not be disputed.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

Asarco had an ownership interest in Lower Silver Creek for 85 years, from 1925 to 1981.[9] Asarco also leased a separate upstream area from 1970 to 1979 known as Richardson Flat.[10] From 1979 to 1982, under an assignment, Noranda was the lessee of Richardson Flat.[11]

In the 1980s, the EPA began studying Richardson Flat for cleanup under CERCLA.[12] United Park City Mines Company (United Park), a mining company that owns portions of the site, took a leading role in the cleanup work.[13] Through a judicial consent decree with the EPA, United Park assumed all responsibility for performing and paying for cleanup of Richardson Flat in exchange for United Park's ability to draw compensation from an account funded to the EPA by Asarco.[14] The cleanup plan was selected by the EPA in a 2005 Record of Decision. The cleanup costs for Richardson Flat are relatively certain because a plan has been approved.[15] However, the total cleanup cost for the entire site consisting of Richardson Flat and Lower Silver Creek is dependent upon the EPA also approving a final cleanup plan for Lower Silver Creek.[16]

On July 26, 2004, the EPA sent letters to Noranda and Asarco concerning their potential liabilities, seeking reimbursement for the costs incurred for remediating Richardson Flat.[17] Asarco filed bankruptcy in August 2005.[18] In March 2006, Noranda settled its liability to the EPA for Richardson Flat for $60,000.[19] This settlement did not address Lower Silver Creek.[20]

---

[9] *Id.* at 5.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 6.

[13] *Id.*

[14] *Id.; see also* Ex. 3 2005 Record of Decision, docket no. 176-4.

[15] *Id.; see also* Ex. 4 2007 United Park Consent Decree; docket no. 176-5.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

Around 2009, the EPA expanded its cleanup effort to include Lower Silver Creek.[21] In 2014, United Park entered into an agreement with the EPA taking full responsibility for the cleanup of Lower Silver Creek.[22] In return, the EPA agreed to allow United Park to seek reimbursement from an account funded with $6 million of the funds the EPA received from Asarco in Asarco's 2009 bankruptcy settlement of Asarco's liability as to Richardson Flat and Lower Silver Creek.[23] Pursuant to the agreement between United Park and the EPA, United Park can only seek reimbursement once it begins cleaning up Lower Silver Creek under a plan approved by the EPA.[24] But Asarco filed this case to compel Noranda to contribute toward Asarco's payment.

The remediation at Lower Silver Creek requires that United Park submit to the EPA an Engineering Evaluation and Cost Analysis.[25] Because the cost to remediate Lower Silver Creek is still being calculated, the total cost to remediate the area is not yet known.[26]

## Asarco's Bankruptcy and Settlement

On August 9, 2005, Asarco filed a voluntary petition for relief under Chapter 11 in the Bankruptcy Court for the Southern District of Texas.[27] Asarco sought protection from over $3.6 billion in environmental claims related to 52 sites across the country, including the site in this case.[28]

---

[20] *Id.*

[21] *Id.* at 6.

[22] *Id.*

[23] *Id.*

[24] *Id,*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

In 2006, the EPA filed a Proof of Claim for approximately $607,000 in cleanup costs related to Richardson Flat.[29] In 2008, after learning of Asarco's ownership history at Lower Silver Creek, the EPA filed a Supplemental Proof of Claim and sought to recover a total of $50 million to account for Asarco's liabilities at Lower Silver Creek, in addition to the $607,000 it had previously sought.[30] The EPA settled its claims against Asarco related to Lower Silver Creek and Richardson Flat for $7.4 million.[31] The Bankruptcy Court approved Asarco's settlement with the EPA.[32]

On December 9, 2009, Asarco paid the EPA the $7.4 million with interest of $1,307,455.57 for total of $8,707,455.57.[33] The EPA has yet to spend $8,576,455.16 of the $8,707,455.57.[34]

The total cleanup costs for Richardson Flat have been reasonably known since 2005 when the EPA approved its ROD.[35] Although some work remains to be done at Richardson Flat, the anticipated costs are set.[36] The anticipated cost for the Lower Silver Creek portion of the site, however, is uncertain.[37]

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at 10.

[32] *Id.*

[33] *Id.* at 11.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id*.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[38]

Factors relevant to the court's decision are: "(1) whether the stay would promote judicial economy; (2) whether the stay would avoid confusion and inconsistent results; and (3) whether the stay would unduly prejudice the parties or create undue hardship."[39]

## DISCUSSION

### 1. The Nature of CERCLA Contribution Claims.

CERCLA was enacted to address threats to human health and the environment.[40] The EPA functions as the lead federal agency with responsibility for site cleanup. "[After] a site has been identified as hazardous, the EPA undertakes a Remedial Investigation/Feasibility Study to develop various options for cleanup and to determine the scope of remedial action."[41] "After completing its investigation, the EPA prepares a record of decision (ROD) describing the remedial action it selected and the action's anticipated costs."[42] "[After] the EPA has incurred response costs or determined that an imminent release of hazardous contaminants would initiate a government response, the EPA can bring a CERCLA action against potentially responsible parties (PRPs).[43]

---

[38] *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936); *see also Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir. 1936).

[39] *See Gale v. Brinker Intern. Payroll Co., L.P.*, 2010 WL 3835215, at *1–2 (D. Utah 2010).

[40] 40 C.F.R. § 300.430(a)(1).

[41] *Asarco, LLC v. NL Indus., Inc.,* 2013 WL 12177089, at *2 (W.D. Mo. 2013).

[42] *Id.*

[43] *Id.*

Section 107 of CERCLA imposes joint and several liability for parties who contributed to contamination at a site. Section 9613(f)(1) of CERCLA provides that "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."[44] "A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to [the settlement]."[45]

### 2. Asarco's Contribution Claim Depends on a Future Remediation Plan

Asarco seeks contribution to its settlement payment of remediation costs for Lower Silver Creek, for the extent of the environmental damages caused by Noranda.[46] To succeed on a claim for contribution, Asarco must establish that it paid more than its fair share.[47] Noranda contends that it would be difficult to determine whether it has paid less than its fair share of remediation costs at the Site because the cleanup work for Richardson Flat and Lower Silver Creek is currently in progress and no formal plan for Lower Silver Creek has been approved by the EPA.[48] Because the final cost of remediation is not yet known, Asarco seeks to prove its contribution claim by having experts estimate remediation costs and allocate fault.[49]

Asarco's case is procedurally unusual because Asarco settled the EPA's claims in a Chapter 11 bankruptcy proceeding. Being under the pressure of the Chapter 11 proceeding may

---

[44] 42 U.S.C. § 9613(f)(1).

[45] 42 U.S.C. § 9613(f)(3)(B).

[46] Second Amended Complaint,¶¶ 21–32, docket no. 58.

[47] *United States v. Colorado & E. R. Co.,* 50 F.3d 1530, 1535 (10th Cir. 1995).

[48] Defendant Noranda Mining Inc.'s Motion and Memorandum In Support of Stay at 15; docket no . 176.

[49] Asarco LLC's Response In Opposition to Noranda Mining, Inc.'s Motion and Memorandum In Support of Stay at 2, docket no. 182, filed on February 15, 2017.

have caused the EPA to settle its claims earlier than it might have otherwise.[50] Because of the large number of claims Asarco settled in the Chapter 11 proceeding, other courts have faced similar issues in other locations as Asarco seeks contribution remediation payments it has made *before* the EPA has approved a remediation plan.

Noranda primarily relies on cases from the Eastern District of Missouri (*Eastern Missouri NL*)[51] and Western District of Missouri (*Western Missouri NL*).[52] In these cases, a stay was issued because the EPA had yet to conduct a site investigation and issue its record of decision describing the remedial action it selected and the action's anticipated costs.[53] The courts reasoned that, although contribution claims are often resolved before the final cleanup, a record of decision is typically reached prior to determination of contribution.[54] Although some factual and procedural differences were present in the Missouri cases, the overarching policy reason for issuing a stay applies here: The EPA has not yet approved a ROD.

In *Western Missouri NL* the court found that:

> [I]n order to assess Asarco's contribution claim, the Court must first 1) predict the final remedy the EPA would select for the area; 2) calculate the potential costs of such cleanup; 3) assess the liability of each party in relation to those costs; and 4) determine how the predicted remedial action may affect any natural resources, resulting in an estimation of total [natural resource damages][55]

The Court identified four concerns in assessing the above factors:

> 1) the EPA – not the Court – is the agency with competence, expertise, and experience to make these determinations; 2) Congress intended that the EPA – not the Court – make these findings; 3) any Court-ordered concurrent investigation

---

[50] *Asarco LLC v. NL Indus., Inc.,* 2013 WL 12177089 at *4 (W.D. Mo. 2013) (finding that Asarco's bankruptcy caused the EPA to settle through a process that was not the result of the conventional CERCLA process).

[51] *Asarco LLC v. NL Indus., Inc.,* 2013 WL 943614 (E.D. Mo. 2013).

[52] *Asarco LLC v. NL Indus., Inc.,* 2013 WL 12177089 (W.D. Mo. 2013).

[53] *Id.*

[54] *Id.*; *See also Asarco LLC,* 2013 WL 943614 (E.D. Mo. 2013).

[55] *Asarco LLC v. NL Indus., Inc.,* 2013 WL 12177089, at *5 (W.D. Mo. 2013).

into these matters would be duplicative and wasteful; and 4) an Order in favor of Asarco would expose Defendants to the risk of inconsistent obligations.[56]

Asarco attempts to distinguish the Missouri cases by pointing out that those defendants moved for a stay very early, before discovery commenced.[57] It also argues that those cases involved more complex sites across two different EPA regions and several state boundaries. In contrast, they argue, this case is a straight-forward cleanup of one tailings pile and a nearby water feature - and discovery has ended. The differences do not overcome the concern that adjudicating this case before a ROD has been approved will waste resources for the litigants and the court and require court decisions in a matter where the EPA has primary responsibility.

Asarco had to file this case within three years of entering into its settlement with the EPA. However, the need for Asarco to *file* its contribution claim now does not mean that the case should be *adjudicated* now. This case arose in a unique procedural way. The EPA had to negotiate the remediation settlement with Asarco through the bankruptcy process in advance of an ROD. Without the ROD for Lower Silver Creek describing the remedial action selected and the action's anticipated costs, it is difficult to determine whether Asarco paid more than its share, and by how much.

To determine whether Asarco has a contribution claim, and any amount due, experts for both sides would have to guess at what plan the EPA might adopt in the future, what it would cost, and then allocate the potential liability under the speculative plan. These expert expenses can be reduced or avoided by waiting for the EPA to actually approve a plan. Staying this case until the EPA approves a ROD avoids the risk of liability being mis-allocated under an inappropriate hypothetical plan..

---

[56] *Id.*

[57] Asarco LLC's Response In Opposition to Noranda Mining, Inc.'s Motion and Memorandum In Support of Stay at 16; docket no. 182.

Noranda points out that the allocation of liability changes depending on the cleanup plan the EPA chooses. It attaches the diagrams below for reference.[58] The diagrams depict how the relative liability of the parties would differ depending on the remediation plan the EPA adopts. If the EPA chooses a partial excavation with a cap in place for the remaining tailings, the remediation cost could be $22.5 million. But if the EPA requires a complete "dig and haul" of all affected soils, the remediation cost could be $57 million. Asarco's payment is set but its percentage contribution and the required contributions of others vary widely depending on total cost.



Forecasting allocation of liability before a formal ROD may turn out to be inaccurate and a waste of resources, all to estimate a plan which will soon exist. An administrative agency tasked with primary responsibility for this function should be allowed to act. Money need not be spent on experts who will guess what plan the EPA will implement. The risk that the experts will improperly determine the appropriate allocation of liability is high. If fault is allocated under a cleanup plan different than the EPA approves, there is a risk that the contribution claim would be alleged as a challenge to the judgment and require a new trial. The risks can be avoided by waiting for the EPA to approve a cleanup plan for Lower Silver Creek.

---

[58] Defendant Noranda Mining, Inc.'s Reply In Support of Its Motion to Stay at 7, docket no. 186, March 1, 2017.

Asarco argues that it is not necessary for all remediation costs to be incurred for it to succeed on its claim.[59] Delay until all remediation costs are incurred is not necessary to success on a CERCLA contribution claim. However, a stay should be granted at least until the EPA has approved a remediation plan so that the contribution determination is accurate.

Ordering a stay will: (1) Promote judicial economy because the EPA, not the court, is the proper agency to assess the correct cleanup plan; (2) Avoid confusion and potentially inconsistent results if the EPA selects a different cleanup plan than the one determined by the experts; and (3) Cause minimal prejudice or undue hardship. For the reasons above, Noranda's motion requesting a stay is GRANTED.

## ORDER

Defendant Noranda's motion[60] requesting a stay is GRANTED. The stay will be lifted after the EPA approves a remediation plan for the Lower Silver Creek site. Every three months the parties shall file a joint status report. And when the plan is approved, a status report shall be filed within 14 days, with a motion to lift the stay and a proposed a schedule for resolution of claims remaining in this case, with an attorneys' planning meeting report and a proposed scheduling order as outlined at http://www.utd.uscourts.gov/attorney-planning-meeting-and-report.

Signed July 11, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[59] Asarco LLC's Response In Opposition to Noranda Mining, Inc.'s Motion and Memorandum In Support of Stay at 2; docket no. 182.

[60] Defendant Noranda Mining, Inc.'s Motion and Memorandum In Support of Stay, docket no. 176, filed February 2, 2017.